United States District Court
Southern District of Texas
**ENTERED**
August 25, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Jessica Stark,<br>*Plaintiff,*<br><br>v.<br><br>ABC Pediatric Clinic, P.A., *et al.*<br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action H-21-3822 |

## MEMORANDUM AND RECOMMENDATION

Pending before the court are Plaintiff's Motion for Summary Judgment, ECF No. 48, and Defendants' Motion for Summary Judgment, ECF No. 49. The motions are before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). The undersigned recommends that both motions be **GRANTED IN PART**, that the federal claim and counterclaim be dismissed, and that the remaining state law claims be remanded to state court.

### 1. *Factual Background*

Plaintiff Jessica Stark (Stark) was employed by ABC Pediatric Clinic, P.A., (ABC) for approximately four years. Pl.'s Orig. Compl. ¶ 13, ECF No. 1-1 at 5. ABC is a family owned and operated pediatric clinic located in Houston. Parvizian Decl. ¶ 3, ECF No. 50-1 at 2. Defendants Silen Pahlavan, M.D., (Silen), and Sogol Pahlavan, M.D., (Sogol), are sisters who own and operate ABC with Silen's husband, Mohammad Parvizian (Parvizian). Pl.'s Orig. Compl. ¶ 11, ECF No. 1-1 at 4.

In 2015, Stark began working as a medical scribe for ABC. Parvizian's Decl. ¶ 4, ECF No. 50-1 at 2. In 2016, Stark secured a full-time position with ABC as billing department clerk and was promoted to "billing manager." Stark Dep., ECF No. 50-2 at 8, 25, 40; Parvizian Dep., ECF No. 50-8 at 5; Parvizian Decl. ¶ 4, ECF

No. 50-1 at 2. When promoted, Stark transitioned from an hourly employee earning $25,000 to a salaried employee earning $60,000 annually. Parvizian Decl. ¶ 4, ECF No. 50-1 at 4; ECF No. 50-2 at 15; ECF No. 50-10 at 2. It is undisputed that Stark's responsibilities included:

- Overseeing the billing department and its employees,
- Investigating ABC's claims for reimbursement submitted to Medicare and private insurance carriers,
- Determining whether any claims were underpaid or overpaid and communicating recommendations regarding how to resolve any apparent billing errors or rejected claims,
- Recommending hiring, discipline, and termination of employees.

Parvizian Decl. ¶ 4, ECF No. 50-1 at 2; *see also* Stark Dep., ECF No. 50-2 at 8–14.

In 2018, Stark told Defendants that she wanted to go to law school. Stark Dep., ECF No. 50-2 at 26, 31; Parvizian Decl. ¶ 6, ECF No. 50-1 at 3. Parvizian eventually told Stark that she could not continue her employment at ABC while she attended law school. Parvizian Decl. ¶ 14, ECF No. 50-1 at 4. According to Parvizian, Stark was unhappy with his decision and began mistreating her co-workers, including Jennifer Starnes (Starnes). Parvizian Decl. ¶ 15, ECF No. 50-1 at 4–5; *see also* Starnes Dep., ECF No. 52-3 at 7, 10.

On May 20, 2019, Starnes reported to Parvizian that Stark had threatened to harm her if she told Parvizian about Stark's gossiping. Parvizian Decl. ¶ 15, ECF No. 50-1 at 5; *see also* ECF No. 50-1 at 17. Starnes documented her concerns in an email describing Stark's threats. Parvizian Dep., ECF No. 50-8 at 7–8; ECF No. 50-1 at 17. On the same day, employee Crystal Vasquez (Vasquez) reported to Parvizian that Stark had interfered with the

triage nurse's work duties. Parvizian Decl. ¶ 15, ECF No. 50-1 at 4–5.

On May 20, 2019, Parvizian met with Stark regarding the complaints, and a heated discussion ensued. Parvizian Dep., ECF No. 50-8 at 9–10; Stark Decl. ¶ 6, ECF No. 51-3 at 2. Parvizian told Stark to leave the clinic. Parvizian Dep., ECF No. 50-8 at 14. After Stark left, Parvizian made the decision to terminate Stark's employment and completely revoked her access to ABC's computer network. Parvizian Dep., ECF No. 48-3 at 9; Parvizian Decl. ¶ 6, ECF No. 52-1 at 3. On May 21, 2019, Parvizian terminated Stark's employment. Parvizian Decl. ¶ 6, ECF No. 52-1 at 3.

Parvizian stated that, after Stark left the office, he tried to log into the ABC desktop computer, but the password had been changed. Parvizian Decl. ¶ 10, ECF No. 52-1 at 3. According to Parvizian, the inability to access the information on the computer effectively barred ABC from accessing clinic filings for an ongoing audit. Parvizian Decl. ¶ 10, ECF No. 52-1 at 4. After multiple emails with Stark asking for the correct password, Parvizian filed a police report to get Stark to provide the correct password. Parvizian Decl. ¶¶ 8–9, ECF No. 52-1 at 3–4. After several days, Stark provided the correct password. Parvizian Decl. ¶ 9, ECF No. 52-1 at 3–4.

Parvizian never told Stark that she was not allowed to change her password, and ABC had no policies regarding company computer passwords. Parvizian Dep., ECF No. 48-3 at 6, 14. After investigating, Parvizian found no indication that Stark had accessed ABC's computers. Parvizian Dep., ECF No. 51-2 at 18. Parvizian asserted that, because of the computer lockout, ABC lost valuable work time on an ongoing audit, lost revenue, and incurred the expense hiring a third-party technology vendor to investigate and install a new monitoring system. Parvizian Decl. ¶¶ 10–11, ECF No. 52-1 at 4.

### *2. Procedural Posture*

On October 13, 2021, Stark filed a state court petition alleging violations of the Fair Labor Standards Act (FLSA) based on unpaid overtime and Defendants' failure to keep accurate records. Pl.'s Orig. Compl., ECF No. 1-1 at 3–19. Stark also asserted a state law claim for retaliation under the Texas Medicaid Fraud Prevention Act (TMFPA). Pl.'s Orig. Compl., ECF No. 1-1 at 14–15. She also alleged claims for breach of contract based on Defendants' failure to pay for babysitting services and accrued paid time off (PTO).[1] On November 21, 2021, the defendants removed Stark's suit to federal court solely based on federal question jurisdiction under 28 U.S.C. § 1331 based on Stark's FLSA claim. ECF No. 1 at 1–2.

On November 28, 2021, Defendants answered the lawsuit and asserted counterclaims for Stark's violation of the Computer Fraud and Abuse Act (CFAA) under 18 U.S.C § 1030(a)(4) and the Texas Harmful Access by Computer Act under Tex. Civ. Prac. & Rem. Code § 143.001. Defs.' Ans., ECF No. 4. Defendants alleged that Stark accessed ABC's computer network without authorization and changed her computer's password. ECF No. 4 at 12–13.

Stark moved to dismiss the counterclaims, and the defendants amended their counterclaims. ECF Nos. 7, 9. Stark again moved to dismiss, but the court denied Stark's motion. ECF Nos. 11, 26. Stark now moves for summary judgment on both of ABC's counterclaims, arguing that "the uncontroverted evidence shows that Stark never used her computer in an unauthorized manner." ECF No. 48 at 2. Defendants argue that Stark never had "effective consent" to change the password. ECF No. 52 at 1–2. The

---

[1] Stark withdrew the unpaid PTO claim in her response to Defendants' Motion for Summary Judgment. ECF No. 51 at 16 n.4.

4

defendants also moved for summary judgment on Stark's FLSA, TMFPA, and breach of contract claims. ECF No. 49.

### *3. Summary Judgment Standard*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific

evidence in the record and to articulate precisely how this evidence supports [the] claim.").

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "[T]here must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### 4. Summary Judgment Analysis

The parties have filed motions for summary judgment on all claims and counterclaims. Because this case was removed based on federal question jurisdiction, the court first determines whether summary judgment on the federal law claims is appropriate.

### A. CFAA

The CFAA provides a private civil cause of action in certain circumstances, such as when, as is alleged here, someone "intentionally accesses a protected computer without authorization" and causes at least $5,000 in losses during a one-year period. 18 U.S.C. §§ 1030(a)(5)(B), (c)(4)(A)(i)(I), (g); *Van Buren v. United States*, 141 S.Ct. 1648, 1652 (2021). A "protected computer" is one that "is used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2). A computer connected to the internet is a "protected computer" under the CFAA. *Merritt Hawkins & Assocs., LLC v. Gresham*, 948 F. Supp. 2d 671, 673–74 (N.D. Tex. 2013) (citing cases).

ABC's pleading asserts that on May 20, 2019—the day before Stark was terminated—Stark, without authorization, accessed an ABC computer and changed its password. ABC's Am. Countercl., ECF No. 9 at 3 ¶¶ 9–10. On summary judgment, the court does not rely on the allegations in the pleadings but on the evidence. When

6

deposed individually and on behalf of ABC, Parvizian testified that: (1) he did not tell Stark not to put a password on her work computer; (2) he did not tell Stark that she could never change her password; and (3) ABC did not have a policy regarding passwords on company computers. Parvizian Dep., ECF No. 48-3 at 3, 6, 14; *see also*, ABC's Office Policies, ECF No. 50-18 at 5–11. Parvizian also testified that, after Stark's termination, ABC instructed its IT specialist to "monitor [ABC's] entire system for the next few months," and the IT specialist found no indication that Stark accessed any of ABC's computers. Parvizian Dep., ECF No. 48-3 at 9. Defendants present no evidence to show when the password was changed. Although Parvizian testified that there was a possibility that Stark changed the password after she was told to leave work on May 20, 2019, Parvizian Dep., ECF No. 51-2 at 18, there is no evidence that she did so.

These facts and testimony entirely undermine ABC's claim that Stark accessed a computer and changed a password without authorization. So, when Stark argued on summary judgment that all the evidence showed no unauthorized access, ECF No. 48 at 4–5, Parvizian—for the first time—declared: "ABC provided Ms. Stark with log-in credentials for [ABC's] computers. ABC specifically prohibited Ms. Stark . . . from accessing its computers to change such log-in credentials." Parvizian Decl. ¶ 4, ECF No. 52-1 at 2. This declaration directly contradicts Parvizian's prior deposition testimony, and no effort is made to explain the inconsistent testimony. As such, the court refuses to consider this statement. *See Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472 (2019) ("Under the sham affidavit doctrine, a district court may refuse to consider statements made in an affidavit that are 'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham.'") (citations omitted).

7

Because ABC has failed to raise a genuine issue of material fact on its CFAA counterclaim, Stark's motion for summary judgment should be granted.

### B. FLSA

The FLSA generally requires employers to pay workers one-and-a-half times their normal pay rate for hours worked more than forty in a week. *See* 29 U.S.C. § 207(a)(2). The overtime requirement does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity[.]" 29 U.S.C. § 213(a)(1). "In a dispute about an FLSA exemption, the employer has the burden of establishing that the exemption applies." *Adams v. All Coast, L.L.C.*, 15 F.4th 365, 368 (5th Cir. 2021).

The FLSA has a two-year statute of limitations "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The employee bears the burden of proving willfulness. *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015). "Willfulness has been found when the evidence demonstrated that an employer actually knew its pay structure violated the FLSA or ignored complaints that were brought to its attention." *Solis v. Crescent Drilling & Prod., Inc.*, No. SA-19-CV-1194-FB, 2022 WL 10757401, at *4 (W.D. Tex. Oct. 17, 2022) (citing *Zannikos v. Oil Inspections*, 605 F. App'x 349, 360 (5th Cir. 2015)); *see also Solis v. Crescent Drilling & Prod., Inc.*, No. SA-19-CV-1194-FB, 2022 WL 18110062, at *1 (W.D. Tex. Nov. 2, 2022) (adopting magistrate judge's report and recommendation). "Evidence that a defendant was merely negligent regarding FLSA requirements is insufficient to show willfulness." *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 926 (5th Cir. 2018).

The parties agree that Stark's FLSA claim arose more than two but less than three years before she filed suit. *See* ECF No. 51

at 14; ECF No. 49 at 22–23. Thus, to maintain her FLSA claim, Stark must prove willfulness by showing that ABC knew that claiming an administrative exemption for Stark violated the FLSA, recklessly disregarded the violation, or ignored complaints about the violation. *See Solis*, 2022 WL 10757401, at *4 (stating that a finding willfulness requires evidence demonstrating that an employer actually knew its pay structure violated the FLSA or ignored complaints that were brought to its attention); *Ramos v. Al-Bataineh*, 599 F. App'x 548 at 551 (5th Cir. 2015) (stating that willfulness requires evidence demonstrating that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute.").

Stark argues that ABC fails to meet its burden of demonstrating that she qualified for an exemption and that ABC violated the FLSA by not compensating her at an overtime pay rate for the hours she worked in excess of forty per week. *See* ECF No. 51 at 12–13. ABC argues that Stark was properly classified as an exempt employee and, in any event, that Stark fails to demonstrate ABC willfully misclassified her. ECF No. 53 at 4–5.

The court turns first to the parties' disagreement about Stark's classification. An employee falls within the administrative exemption if (1) she is compensated on a salary or fee basis at a rate of $684 or more per week; (2) her "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (3) her "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

Stark testified that, in mid-2016, she transitioned from being paid by the hour to becoming the billing manager and receiving a salary of $60,000, which exceeds $684 per week. *See* Stark Dep., ECF No. 50-2 at 8, 15, 40; ECF No. 50-10 at 2.

9

Stark testified her tasks included pulling resumes for the doctors to review in hiring scribes, preparing schedules for the scribes, working with the front office staff, billing, making sure that things were done correctly between the medical assistants and the billing department, posting insurance payments, posting accounts receivable, reviewing insurance explanation of benefits, investigating whether insurance claims were properly submitted, and following up with insurance companies on denied or underpaid claims. *See* Stark Dep., ECF No. 50-2 at 8–14. Parvizian testified that Stark made independent and final decisions such as deciding what billing codes to use. Parvizian Dep., ECF No. 50-8 at 24. Although Stark denies that she had authority over the billing department, ECF No. 51 at 13, her own testimony discussed above belies that assertion and shows that her duties did require the "exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). The evidence shows that Stark met all three elements of the administrative exemption. Thus, Stark was not entitled to overtime pay under the FLSA, and summary judgment should be granted on that claim.

Assuming for the sake of argument that Stark was not exempt from the FLSA's overtime requirements, because her claim was brought more than two years after it accrued, the only way she can recover is if the violation was willful. Thus, the court next considers the parties' disagreement about willfulness. Stark does not argue that ABC knew its pay structure violated the FLSA, but, rather, she argues only that Parvizian ignored her complaints "about his failure to pay her for her overtime." Pl.'s Resp., ECF No. 51 at 14. The issue here is not whether she asked for overtime and was ignored; the issue is whether ABC knowingly or with reckless disregard for the FLSA exemption provisions misclassified Stark as exempt. If ABC properly classified Stark, it did not commit a violation by not paying her overtime wages. *See* 29 U.S.C. §

10

213(a)(1) (stating that exempt employees are not entitled to overtime pay).

Stark presents no evidence that she brought to Defendants' attention that she was misclassified. There is no evidence to suggest that Defendants knew they were misclassifying her. Stark has produced no evidence that Defendants knowingly or with reckless disregard misclassified her. Thus, even if Defendants wrongly classified her as exempt, Stark has failed to meet her burden of showing ABC acted willfully in so doing. Even if misclassified, Stark is not entitled to relief because her FLSA claim is barred by the statute of limitations.

### 5. *Supplemental Jurisdiction*

Having dismissed all federal claims over which the court has original jurisdiction, the court turns to Plaintiff's remaining state law claims. A federal court may ordinarily exercise supplemental jurisdiction over claims that "are so related to the original claims that they ... 'derive from a common nucleus of operative fact.'" *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). However, if the court dismisses all claims over which it has original jurisdiction, the court may decline to exercise supplemental jurisdiction over any remaining claims. 28 U.S.C. § 1367(c)(3). The "general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute." *The Lamar Co., L.L.C. v. Miss. Transp. Comm'n*, 976 F.3d 524, 528 (5th Cir. 2020) (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009)). "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Heggemeier v. Caldwell Cnty., Tex.*, 826 F.3d 861, 872 (5th Cir. 2016) (quoting

*Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993)). Courts should consider the factors set forth in 28 U.S.C. § 1367 and "the common law factors of judicial economy, convenience, fairness, and comity." *Brookshire Bros. Holding, Inc.*, 554 F.3d at 601–02.

The supplemental jurisdiction statute sets forth four factors for courts to consider when deciding whether to exercise supplemental jurisdiction: (1) whether the state law claim raises novel or complex issues; (2) whether the state law claim predominates over federal law claims; (3) whether the federal law claims have been dismissed; and (4) whether there are exceptional circumstances for declining jurisdiction. 28 U.S.C. § 1367(c)(1)–(4); *Garcia v. City of McAllen, Tex.*, 853 Fed. Appx. 918, 920 (5th Cir. 2021). Here, the statutory factors favor declining supplemental jurisdiction for several reasons. The statutory state law claims raise different legal issues than the federal counterpart claims. Stark's breach of contract claims are based on a set of complex facts completely divorced from the facts underlying the federal claims, thus predominating over the now non-existent federal claims. The court finds no exceptional circumstances for declining supplemental jurisdiction but finds that, on the whole, the statutory factors favor declining supplemental jurisdiction.

The court now turns to the common law factors. Because the parties have conducted discovery and filed motions for summary judgment, the factor of judicial economy favors exercising supplemental jurisdiction. The convenience factor is neutral, because this court and the state court in which this case was originally filed are in Houston where the events giving rise to this lawsuit occurred. Thus, the two courts are equally convenient for the parties and witnesses. As for fairness, any delay caused by declining supplemental jurisdiction will be equally unfair to all parties. However, it is certainly fair to have state law claims heard in state court, and there is no evidence that either forum will be

unfair to any party. Thus, the fairness factor is neutral. Finally, comity favors declining supplemental jurisdiction. Comity requires that federal courts respect the "important interests of federalism and comity," as federal courts are of limited jurisdiction and are "not as well[-]equipped for determinations of state law as are state courts." *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 160 (5th Cir. 2011) (quoting *Parker & Parsley Petrol. Co. v. Dresser Indus.*, 972 F.2d 580, 588–89 (5th Cir. 1992)). After considering the statutory and common law factors, the court in its discretion follows the general rule of declining to exercise supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *The Lamar Co.*, 976 F.3d at 528.

### *6. Conclusion*

For the above reasons, the court recommends that both Plaintiff's Motion for Summary Judgment, ECF No. 48, and Defendants' Motion for Summary Judgment, ECF No. 49, be **GRANTED IN PART**, that the federal claim and counterclaim be dismissed, and that the remaining state law claims be remanded to state court.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on August 25, 2023.

Peter Bray
United States Magistrate Judge